UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES                                                                      Plaintiff

v.                                                        Criminal Action No. 3:18-cr-46-RGJ

JAVIER RODRIGUEZ                                                                Defendants
CHARLES CATER

* * * * *

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on pretrial motions filed by the United States and co-defendants Charles Cater ("Cater") and Javier Rodriguez ("Rodriguez").  The United States moves to admit Cater's post-Miranda statements at trial for impeachment purposes; Cater's recorded statements to his wife while in custody [DE 239; DE 240] and Rodriguez's statements.  [DE 276].  Defendants responded to each motion.  [DE 271; DE 272; DE 286].  Rodriguez moves to exclude evidence from intercepted communications [DE 249], moves in limine to exclude translated transcripts [DE 252] and moves to compel the United States to file "unredacted wiretap applications under seal for purposes of appellant [sic] review" [DE 263].   The United States responded, and Rodriguez replied.  [DE 273; DE 277; DE 279; DE 284].  Cater moves to sever count six of the superseding indictment [DE 261] and to exclude 404(b) evidence [DE 268].  The United States responded to both motions.  [DE 280; DE 282].  In an untimely motion, Cater moves in limine to exclude statements from non-testifying codefendants.  [DE 300].  The United States responded.  [DE 303].  Rodriguez and the United States also filed various motions to seal.  [DE 262; DE 264; DE 270; DE 275; DE 285].  For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** the motions.

## BACKGROUND

The factual background previously set forth in this Court's orders [DE 195; DE 260] is incorporated by reference.  Additional relevant facts for each motion are discussed below.

## STANDARD

Federal district courts have the power to exclude irrelevant, inadmissible, or prejudicial evidence in limine pursuant to their inherent authority to manage trials.  *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)); *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013).  That said, the "better practice" is to defer evidentiary rulings until trial unless the evidence is clearly inadmissible on all potential grounds.  *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997); *Bouchard v. Am. Home Prod. Corp.*, 213 F. Supp. 2d 802, 810 (N.D. Ohio 2002) (citing *Luce*, 469 U.S. at 41 n. 4).  This posture is favored so that "questions of foundation, relevancy and potential prejudice may be resolved in proper context."  *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010).  When this Court issues a ruling in limine, it is "no more than a preliminary, or advisory, opinion."  *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd,* 469 U.S. 38 (1984)).  Thus, even where a motion in limine is denied, the Court may return to its ruling at trial "for whatever reason it deems appropriate."  *Id.* (citing *Luce*, 713 F.2d at 1239).  Likewise, the Court has discretion to alter or amend an in limine ruling at trial.  *Luce*, 469 U.S. at 41–42.

## DISCUSSION

I.     **The United States' Motion to Admit Cater's Post-Miranda Statements at Trial for Impeachment Purposes [DE 239].**

The United States moves in limine to use Cater's post-*Miranda* statements at trial for impeachment.  [DE 239 at 1580].  The Court granted Cater's earlier motion to suppress, finding

the *Miranda* warning ineffective, allowing his pre-*Miranda* statements only for impeachment purposes, and suppressing the rest of his statements ("*Miranda* Order"). [DE 195]. Cater argues that his post -*Miranda* statements were coerced, and that the Court already ruled on this in the *Miranda* Order. [DE 271 at 2733-74].

   *i.   Background*

   Law enforcement interrogated Cater twice. Louisville Metro Police Department ("LMPD") Detectives Jason Clopton ("Clopton") and Chris Middleton ("Middleton") conducted the first interrogation. Clopton began the first by asking Cater: "You got any idea why you're here today?" [DE 161-4 at 741]. Clopton and Middleton continued to ask Cater questions for approximately sixteen minutes before providing him *Miranda* rights. [*Id.* at 741-756]. After Clopton and Middleton ended the interrogation, they left the room. [DE 161-2 at 693]. The second interrogation began around five hours later when they returned with Brian Sanders ("Sanders"), a special agent with the DEA. [*Id.* at 693]. They did not re-read Cater his *Miranda* rights before they resumed questioning of him. [DE 183 at 1173].

   *ii.   Standard*

   If a suspect is interrogated while in custody and they do not voluntarily, knowingly, and intelligently waive their *Miranda* rights, any statement they make to the police must be suppressed. *Berkemer v. McCarty*, 468 U.S. 420, 429 (1984). A defendant's voluntary statement that is inadmissible due to the government's failure to provide Miranda warnings is nonetheless admissible for impeachment purposes. *Oregon v. Elstad*, 470 U.S. 298, 307 (1985) (citing *Harris v. New York*, 401 U.S. 222 (1971)). When an unwarned statement is preserved for use in situations that fall outside the sweep of the Miranda presumption, "the primary criterion of admissibility remains the 'old' due process voluntariness test. *Id.* at 308. The inquiry is whether the failure to administer the warnings was accompanied by any actual coercion, improper tactics or other

3

circumstances calculated to undermine the suspect's ability to exercise his free will in obtaining statements so that there was a violation of the defendant's constitutional rights. *Id.* at 299.

A suspect's statement to police is involuntary and inadmissible—even for impeachment purposes—if the suspect's will is "overborne in such a way as to render his or her confession a product of coercion." *Arizona v. Fulminante*, 499 U.S. 279, 288 (1991). The Sixth Circuit has established a test for establishing whether a statement is involuntary as the result of police coercion: "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999). The prosecution bears the burden of proving the waiver by at least a preponderance of the evidence and the voluntariness of the confession. *Colorado v. Connelly*, 479 U.S. 157, 169 (1986); *Lego v. Twomey*, 404 U.S. 477, 489 (1972).

    *iii.   Analysis*

The United States argues the *Miranda* Order explicitly did not reach whether the post-*Miranda* statements could be used for impeachment when it stated, "the *Miranda* warning was ineffective, and Cater's statements post-*Miranda* must be suppressed. The United States did not argue for the use of the post-*Miranda* statements for impeachment purposes and the Court therefore does not address this." [DE 195 at 1392; DE 239 at 1582]. The *Miranda* Order then analyzes the voluntariness of both Cater's first and second post-*Miranda* interrogation statements. [DE 195 at 1392-93, 95, 1400]. Discussing the first interrogation, the Court stated, "because Clopton's *Miranda* warning was ineffective, Cater could not waive his *Miranda* rights and thus the Court need not determine whether his *Miranda* waiver was made knowingly, voluntarily, and intelligently. *See* [*Missouri v.*] *Seibert*, 542 U.S.[] 612 n.4, 124 S.Ct. 2601 (describing how a

4

defendant cannot waive his *Miranda* rights if the warning was ineffective)."  [*Id.* at 1395].  The Court then quoted the transcript of the interrogation in which Cater asked about the purpose of signing the *Miranda* waiver and concluded that "[d]eceiving the Cater about the purpose of a waiver clearly subverts the purpose of *Miranda*.  These post-*Miranda* first interrogation statements have already been suppressed under *Seibert*."   [*Id.*].   The Court next analyzed the second interrogation statements, concluding that they were coerced under a *Mahan* factor analysis.  [*Id.* at 1395-1400].

Thus, because the Court made no earlier finding on voluntariness and coercion for the post-*Miranda* statements made during the first interrogation, and Cater makes no argument for their exclusion,[1] the United States may use the first interrogation for impeachment purposes if Cater testifies at trial inconsistently with statements made during the first interrogation.  *Harris v. New York*, 401 U.S. 222, 224–226 (1971) (unwarned but voluntary statement may be used for impeachment).  Because, under the Court's previous analysis, "the government has failed to show by a preponderance of the evidence that Cater's statements were voluntary and the totality of the circumstances show that the statements made during the second interrogation were, in fact, coerced," these statements must be suppressed even for impeachment purposes.  [DE 195 at 1400]. *See Chavez v. Martinez*, 538 U.S. 760, 769 (2003) ("coercive police interrogations have an automatic protection from the use of their involuntary statements (or evidence derived from their statements) in any subsequent criminal trial."); *Mincey v. Arizona*, 437 U.S. 385, 398 (1978) ("*any* criminal trial use against a defendant of his involuntary statement is a denial of due process of law").  The United States offered no new reasons for the Court to revisit its decision on coercion

---

[1] *See* [DE 271 at 2733], stating, where the United States also moved to admit Cater's first post-*Miranda* interrogation statements for impeachment, "Defense Counsel leaves this determination to the sound judgment and discretion of the court."

of the second interrogation, or on the suppression of Cater's statements under *Seibert*.  *See* [DE 239].  The second interrogation is thus suppressed in its entirety.  Thus, the United States' Motion to Admit Cater's Post-*Miranda* Statements at Trial for Impeachment Purposes [DE 239] is **GRANTED in part** and **DENIED in part**, and the United States may use the post-*Miranda* statements during the first interrogation for impeachment and may not use the post-*Miranda* statements made during the second interrogation.

## II.    United States Motion to Admit Defendant's Recorded Statements Made to His Wife While in Custody [DE 240].

The United States argues Cater's recorded statements made to his wife during his interrogations should be admitted at trial for use in the United States' case-in-chief, because they were not statements made to or at the direction of law enforcement.  [DE 240 at 1706-07].  Cater called his wife on speakerphone during his interrogation twice, once in the middle of his first interrogation and again in the middle of his second interrogation.  [*Id.*].  Cater argues, based on the *Miranda* Order, any statements made during the second interrogation should be suppressed as coerced.  [DE 272 at 2736].  The United States argues that the *Miranda* Order does not directly address Cater's phone conversations with his wife.  [DE 240 at 1707].  The United States argues that Cater's interrogation is similar to that in *Arizona v. Mauro*, 481 U.S. 520, 529–30 (1987), where the court found that a detective did not functionally interrogate the suspect by allowing him to speak with his wife.  *Id.* at 524, 527, 529 ("[o]fficers do not interrogate a suspect simply by hoping that he will incriminate himself.").

Cater makes no argument about the recorded statements made to his wife during the first interrogation.  [DE 272].  As the Court made no earlier finding on voluntariness or coercive nature on the phone call, if there is no coercive nature to the phone call or other factors that render Cater's statements in the call involuntary, and assuming the evidence is relevant, proper foundation is laid,

and the prejudice does not outweigh the probative value, the phone call during the first interrogation may be admitted at trial. *See Mauro*, 481 U.S. at 529–30 (1987).

As discussed above, in its *Miranda* Order, the Court held that all Cater's statements during the second interrogation should be suppressed because his statements were coerced. [DE 195 at 1400]. In that Order, the Court did directly address Cater's conversation with his wife during the second interrogation:

> During Cater's conversation with his wife, after Middleton and Sanders make [] comments about the death penalty, Cater is completely focused on the death penalty [DE 161-5 at 899] and says: "Just get me some help, and everything else, I just got to try to get myself together because it's overwhelming right now. And I mean, I got to get myself together, but just please get me some help." *Id.* at 908. The threat of the death penalty was the crucial motivating factor behind any statements made by Cater after Agent Sanders coercive statements. *Id.* at 879.

[*Id.*]. Having considered the coercive nature of interrogation on Cater's phone conversation with his wife and concluded that these statements were coerced (and inherently involuntary), the Court suppressed these statements. All statements made during the second interrogation remain suppressed, including those made to his wife during the recorded phone conversation. Thus, the United States' Second Motion in Limine to Admit Cater's Recorded Statements Made to His Wife While in Custody [DE 240] is **GRANTED in part** and **DENIED in part**.

## III.   Defendants' Motion to Exclude Evidence [DE 249].

Defendants[2] move to exclude evidence of "the contents and substance of intercepted cell phone, wire, and electronic communications obtained by agents of the United States under the purported authority of wiretap Orders entered on December 20, 2017, and January 23, 2018" and derivative evidence. [DE 249 at 2036]. Defendants argue that such evidence is fatally defective, has an acknowledged time gap, and that the second order was obtained relying on information

---

[2] While the motion was originally Rodriquez's motion, the Court granted Cater's oral motion to adopt at the final pretrial conference June 22, 2022. [DE 269]

obtained from the facially defective order and the gap period.  [*Id.* at 2036-37].  The United States argues that each order was judicially authorized based on plain language reviewed as a whole, and even if there was a small technical defect, it was not enough to render either order insufficient. [DE 273 at 2740-41].

i.    *Background*

As part of law enforcement's investigation, District Judge David J. Hale signed two wiretap orders, one on December 20, 2017 ("December Order") [DE 249-2] and the other on January 23, 2018 ("January Order") [DE 249-3] (collectively "the Orders").  Judge Hale subsequently sealed the Orders on motion by the United States.  [DE 265 at 2191].

ii.    *Standard*

"It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (quoting *United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979)).  The defendant's burden extends to both "the burden of production and persuasion."  *United States v. Patel*, 579 F. App'x 449, 453 (6th Cir. 2014), *as amended* (Oct. 21, 2014).  In considering the motion, the Court must view the evidence "in the light most favorable to the government," *id.* (citing *Rodriguez-Suazo*, 346 F.3d at 643), and presume the validity of the wiretap order, giving "great deference to the determinations of the issuing judge." *United States v. Rice*, 478 F.3d 704, 709 (6th Cir. 2007) (quoting *United States v. Corrado*, 227 F.3d 528, 539 (6th Cir. 2000)).  The good-faith exception does not apply to wiretap orders.  *Id.* at 711.

Under the Wiretap Act,[3] "the judge may enter an ex parte order" permitting the interception of wire, oral, or electronic communications if the "judge determines on the basis of the facts submitted by the applicant that [] there is probable cause." 18 U.S.C. § 2518(3). A defendant "may move to suppress the contents of any wire or oral communication intercepted pursuant to [the Wiretap Act] or evidence derived therefrom" if "(i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval." § 2518 (10)(a).

To obtain a pen-register and trap-and-trace order, the government must only certify that "the information likely to be obtained the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122 and 3123(a)(1); *see also Michigan Bell Tel. Co. v. United States*, 565 F.2d 385, 388 (6th Cir. 1977).

   *iii.   Analysis*

Rodriguez argues that the December Order is fatally defective because it "does not authorize interception of voice/wire/electronic communications" and that there "is no language in either document that constitutes a judicial authorization to make interceptions." [DE 249 at 2036]. Rodriguez argues that there is only "a statement that the initial executive branch approval for application has been secured" rather than "a judicial determination that wiretapping is permitted in this case." [DE 249-4 at 2132-33]. The United States responds that Rodriguez's argument is "based upon an extremely myopic reading" of a single sentence of the Orders. [DE 273 at 2745].

---

[3] Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2510 *et. seq.*

The Court agrees.  The paragraph cited by Rodriguez in his motion references agents authorized by the executive branch to intercept wire and electronic communications.[4]  [DE 249-2 at 2043].  The same is true of the identical language in the December Order.  [DE 249-3 at 2056-57].  As the United States notes, "[a]lthough not the most artfully drafted sentence (the Order was tendered by the United States)," the sentence is not, as Rodriguez argues, a finding or statement of executive branch approval; rather, the district judge is referencing the agents authorized to do the ordered wiretapping.  [DE 249-2 at 2043; DE 273 at 2745].  The Orders contain additional language that literally authorizes interception—for example using 'hereby ordering' language and 'further ordering' regarding the interception.  [DE 249-2 at 2043-46, 48-52; DE 249-3 at 2056-65].  Rodriguez's argument that "there was no judicial authorization" is without merit.  [DE 249-4 at 2133].  When read in context, the Orders authorize wiretapping.  [DE 249-2; DE 249-3]; *United States v. Campbell*, 168 F.3d 263, 267–68 (6th Cir. 1999) ("the key is to consider the specific language used in the context of the entire opinion or order"); *Henley v. Cuyahoga Cnty. Bd. of Mental Retardation & Developmental Disabilities*, 141 F. App'x 437, 443 (6th Cir. 2005) ("When reading the entire order in context . . . ").  Thus, the Orders are not fatally defective due to lack of judicial authorization language.

Rodriguez also moves for the exclusion of physical location information because the Orders were never authorized.  [DE 249-4 at 2133-34].  Because the Orders were authorized, as discussed above, the physical location information will not be excluded.

Rodriguez additionally moves for the exclusion of pen register and trap and trace device information because the language of the affidavit includes a statement that pen registers have limited value if they are not associated with identities and because the DEA had not used these

---

[4] Because the Orders remain sealed, the Court will not quote directly from them. [DE 249-2 at 2052; 249-3 at 2065].

methods in their investigation yet. [DE 249-4 at 2134-35]. The United States responds that Rodriguez has misconstrued the statement. [DE 273 at 2754-55]. The statement, even taken out of context, refers to the limited value of pen registers unassociated with identities—it does not say that pen registers have no value to the investigation. The Orders themselves concluded, based on analysis of all the information before the Court, that pen registers and trap and trace devices would be relevant to the investigation. [DE 249-2 at 2049; DE 249-3 at 2062]. The affidavit and Orders follow what the pen-register and trap-and trace statute requires. [DE 249-2; DE 249-3]; 18 U.S.C. § 3122 and 3123(a)(1). And even if the data were irrelevant, Rodriguez has not shown that suppression would be the proper remedy. *United States v. Powell*, 847 F.3d 760, 771 (6th Cir. 2017) ("Nor does the pen-register/trap-and-trace statute itself provide for the suppression of evidence as a remedy for its violation"); *see also United States v. Thompson*, 936 F.2d 1249, 1250–51 (11th Cir. 1991) (suppression not available remedy for violating the pen-register and trap-and-trace statute).

Rodriguez next argues that there is "an acknowledged gap between January 19, 2018, the expiration date of the December 20, 2017, document and the entry of the January 23, 2018, Order." [DE 249 at 2037]. The United States responds that there were no interceptions during the gap, and thus that the January Order could not have relied on any interceptions during that time. [DE 273 at 2753-54]. Rodriguez identifies no specific interceptions during the gap. The January Order is thus valid because it could not have relied on non-existent interceptions.

Finally, Rodriguez argues that the January Order "was obtained in reliance on information obtained from wiretaps and other surveillance ostensibly authorized by the facially invalid December [] Order and from interceptions obtained during the gap period." [DE 249 at 2037].

Because the Orders are valid, as discussed above, and Rodriguez has identified no interceptions obtained during the "gap period," the January Order is also valid for this reason.

Thus, Rodriguez's Motion to Exclude Evidence [DE 249] is **DENIED**.  The Court also **GRANTS** the United States' motion to seal [DE 270], and docket entry DE 274 (and all attachments) will be sealed based on previous standing orders of this Court.  *See* LCrR49.

## IV.     Rodriguez's Motion in Limine [DE 252].

Rodriguez "objects to the use at trial of transcripts of oral/wire/electronic communications that purport to translate statements made in Spanish or any language other than English unless the translator is identified and qualified as an expert under Evidence Rule 702."  [DE 252 at 2112]. Rodriguez argues that

> Qualification is necessary because a transcript generated by an incompetent translator may not be able to meet the basic requirements for admissibility set out in Evidence Rules 401, 402 and 403.  Incorrect translation will not have any legitimate tendency to make a fact of consequence more or less probable.  Rule 401.  And even if it does have some minimal probative value, incorrect translation is excludable under Rule 403 because it creates a danger of misleading the jury that substantially outweighs it value in achieving the goals of "ascertaining the truth and securing a just determination." Rule 102.

[DE 252 at 2113].

In response to this motion, the United States represented at the final pretrial hearing it would be willing to use a court-certified translator at trial if defense counsel was unwilling or unable to agree to the transcripts.  The Court thus **DENIES** Rodriguez's Motion in Limine [DE 252] **as MOOT**.

## V.     Cater's Motion to Sever Count 6 of Superseding Indictment [DE 261].

Cater moves to sever Count 6, possession of a firearm by a felon, because it would be prejudicial.  [DE 261 at 2177].  The United States "objects to severance and contends that joinder

. . . is proper [but] does not object to the motion to the extent it seeks . . . a bifurcation of Count 6 with an additional offer of proof regarding Cater's felony conviction."  [DE 282 at 2830, 2832].[5]

###### i.   Background

Cater is charged with Conspiracy to Possess with Intent to Distribute Controlled Substances ("Count 1"), Use/Possession/Discharge of a Firearm During, and in Relation To, a Drug Trafficking Crime, Resulting in Murder ("Count 2"), Possession of a Firearm by a Convicted Felon ("Count 6"), and Conspiracy to Obstruct Justice—Witness Tampering ("Count 7").  [DE 175 at 1019-20, 1024].

###### ii.   Standard

Federal Rules of Criminal Procedure 8 and 14 govern the joinder and severance of defendants in an indictment, respectively.  Rule 14 provides that if the proper joinder of defendants under Rule 8 "appears to prejudice a defendant . . . the court may order separate trials of counts . . . or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a); *see also United States v. Cody*, 498 F.3d 582, 587 (6th Cir. 2007).

A defendant is prejudiced "if the jury would be unable to keep the evidence from each offense separate and unable to render a fair and impartial verdict on each offense."  *United States v. Rox*, 692 F.2d 453, 454 (6th Cir. 1982).  "A jury is presumed capable of giving separate consideration to each count, and any potential prejudice from joinder of offenses may be minimized or cured by a limiting instruction to the jury."  *United States v. Penney*, No. 1:04-CR-36, 2005 WL 1668292, at *1 (E.D. Tenn. July 18, 2005) (citing *United States v. Cline*, 362 F.3d 343, 349–50 (6th Cir. 2004)); *see also United States v. Harvey*, 653 F.3d 388, 396 (6th Cir. 2011) (noting that "[j]urors are presumed to follow instructions").  Thus, "[a] request for severance

---

[5] The Court granted the United States' motion [DE 281] for leave to file a response out of time.  [DE 290].

should be denied if a jury can properly compartmentalize the evidence as it relates to the appropriate defendants." *United States v. Driver*, 535 F.3d 424, 427 (6th Cir. 2008) (citation and internal quotation marks omitted).   But "absent a showing of substantial prejudice, spillover of evidence from one [count] to another does not require severance." *United States v. Hang Le-Thy Tran*, 433 F.3d 472, 478 (6th Cir. 2006) (*citing United States v. Johnson*, 763 F.2d 773, 777 (6th Cir. 1985)).  The defendant bears the burden of proving prejudice.  *United States v. Smith*, 138 F. App'x 775, 781 (6th Cir. 2005) (*citing United States v. Bowker*, 372 F.3d 365, 385 (6th Cir. 2004), *cert. granted, judgment vacated on other grounds,* 543 U.S. 1182 (2005)).  "Even where the risk of prejudice is high, 'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.'"  *United States v. Ross*, 703 F.3d 856, 884 (6th Cir. 2012) (quoting *Zafiro v. United States*, 506 U.S. 534 (1993)).  "The resolution of a Rule 14 motion is left to the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion."  *Hang Le-Thy Tran*, 433 F.3d at 478 (citing *United States v. McCoy*, 848 F.2d 743, 744 (6th Cir. 1988)).

    *iii.*    *Analysis*

      Cater does not argue that the charges are not sufficiently related or improperly joined under Rule 8 or that there is any specific prejudice here.  Rather, he alludes to the fact that "when there is not a common scheme or plan, the trial court may sever the charges of drug violations to those of firearm violations [and] the trial court may sever a felony possession charge to prevent jury prejudice based on knowledge of the Defendant's criminal history."  [DE 261 at 2178].  Even so, the Court notes the appropriateness of the joinder of the charges.  The Sixth Circuit has recognized "the efficiency of joining firearm and drug charges when the face of the indictment shows that the charges are sufficiently connected temporally or logically to support the conclusion that the two crimes are part of the same transaction or plan," *United States v. Smith*, 656 F. App'x 70, 73 (6th

Cir. 2016), "as when guns are used in connection with the drug offense or when both guns and drugs are uncovered in the same search," *United States v. Chavis*, 296 F.3d 450, 459 (6th Cir. 2002) (emphasis added) (citing *United States v. Gorecki*, 813 F.2d 40, 42 (3d Cir. 1987)). Here, the superseding indictment charges Cater with Count 6, possessing a firearm on February 23, 2018, and Count 1, participating in a drug conspiracy between November 30, 2017 and February 23, 2018. He is also charged with Count 2, using a firearm during and in relation to drug trafficking resulting in murder on January 20, 2018. Thus, the nexus between the charges suffices under the Sixth Circuit's standards. *See Chavis*, 296 F.3d at 459–60 (collecting cases of firearms tried with drug charges); *United States v. Graham*, 275 F.3d 490, 512 (6th Cir. 2001); *United States v. Hubbard*, 61 F.3d 1261, 1270 (7th Cir. 1995); *Gorecki*, 813 F.2d at 42; *United States v. Valentine*, 706 F.2d 282, 289 (10th Cir. 1983).

*United States v. Smith* discussed the efficiency of joining firearm and drug charges and stated that "although elucidating a defendant's past crimes carries prejudicial potential," severance of the felon in possession charge from the drug related charge in that case was unnecessary, as the Sixth Circuit previously "acknowledged the curative effects of stipulations and limiting instructions." *Smith*, 656 F. App'x at 73. In *Smith*, the defendant "stipulated to his prior felony, and the district court cautioned the jury to consider the charges separately, which minimized the possibility of prejudice." *Id.* The court found that "the jury must be presumed capable of sorting out the evidence and considering the cases of each defendant separately . . . the district court quelled any potential prejudice by instructing the jury to consider the charges separately." *Id.*

Cater requests a separate trial on the felon in possession charge in the case. [DE 261 at 2177]. The United States objects to having a separate trial but does not object to a bifurcated trial. [DE 282 at 2832]. The United States notes this would be "bifurcation of Count 6 with an additional

offer of proof regarding Cater's felony conviction following a verdict on the other counts." [*Id.* at 2832].

Here, granting a bifurcated trial in regards to Court 6, while discretionary, is appropriate because "separating the trial of the felon-in-possession count from that of the drug-trafficking charges would be only a minor burden on the public [since i]t would not take much time to present the evidence of the felon in possession count to the same jury after they reach a verdict on the other counts." *United States v. Brewer*, No. 3:17-CR-37-DJH, 2018 WL 616145, at *4 (W.D. Ky. Jan. 29, 2018) (internal citations omitted); *see also United States v. Robinson*, No. 3:15-CR-96-TBR, 2016 WL 3748520, at *2 (W.D. Ky. July 8, 2016).  This is especially true here, when the parties have agreed to stipulate to the fact that Evans is a felon and knew he was a felon at the time of the alleged offense.  [DE 54 at 379].

Thus, the Court **GRANTS** Cater's Motion to Sever [DE 261] to the extent is seeks to bifurcate the trial but **DENIES** the Motion to the extent it seeks a separate trial.  Thus, the jury will hear evidence in two phases.  In the first phase, the jury will hear facts about the alleged presence of the firearm as well as any evidence related to Count 1, 2, and 7.  But the jury will not be informed of the felon in possession count or receive evidence about Cater's alleged status as a felon until a verdict has been returned on the remainder of the Superseding Indictment.

VI.    **Rodriguez's Motion to Compel the United States to File the Unredacted Wire Tap Applications Under Seal with the Court for Purposes of Appellant Review [DE 263].**

Rodriguez argues the United States should be compelled to file the unredacted wiretap applications because, if he is convicted he will appeal, and "[t]he appellant [sic] courts will need a complete record to review in order to decide on the merits of Mr. Rodriguez's appeal."  [DE 263 at 2184].  The United States opposes his motion because it is not ripe and because it is moot based

on the United States' compliance with 18 U.S.C. § 2518(9).  [DE 277 at 2798-99].  Rodriguez also filed a related motion to seal.  [DE 262].

As the Court discussed in its order on motion to compel unredacted wiretap materials and motion to continue trial date, Defendants are not entitled to unredacted copies of the wiretap materials at this time under Federal Rule of Civil Procedure 16(a)(1)(E) and 18 U.S.C. § 2518. [DE 293].  His motion for unredacted wiretap materials based on appellant review if convicted is unripe, as he has not been convicted.  *See, e.g.*, *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 580–581 (1985) (quoting 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3532, p. 112 (1984)) (not ripe for adjudication if "'contingent future events that may not occur as anticipated, or indeed may not occur at all.'").  Thus, Rodriguez's Motion to compel the United States to File the Unredacted Wire Tap Applications Under Seal with the Court for Purposes of Appellant Review is **DENIED** at this time.

Rodriguez's Motion to Seal [DE 262], which the Court assumes was filed in an abundance of caution, offers no reasons or authority for sealing his motion.  Moreover, while "[t]he sealing of judicial documents and records is left to the sound discretion of the Court," it is well-established that open criminal and civil court records are "the presumptive right of the public."  *United States v. Kischnick*, No. 18-20469, 2020 WL 3172634, at *2 (E.D. Mich. June 15, 2020) (citing *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016)).  The party seeking to seal the records bears the heavy burden of overcoming the presumption, and "only the most compelling reasons can justify non-disclosure of judicial records."  *United States v. Hatcher*, No. 01-80361, 2021 WL 1056841, at *3 (E.D. Mich. Mar. 19, 2021) (quoting *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016)).  To meet this burden, the party seeking a seal must show: (1) a compelling interest in sealing the records; (2)

17

that the interests in sealing outweigh the public's right of access; and (3) that the proposed seal is narrowly tailored. *United States v. Sittenfeld*, No. 1:20-CR-142, 2022 WL 2800460, at *2 (S.D. Ohio July 18, 2022) (citing *Shane Group, Inc.*, 825 F.3d at 306). The moving party must "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'" *Id.* (citing *Shane Group, Inc.*, 825 F.3d at 306). Further, in ruling on a motion to seal, the Court is required to make "specific findings and legal conclusions 'which justify nondisclosure to the public.'" *United States ex rel. Maur v. Hage-Korban*, No. 117CV01079STAJAY, 2019 WL 4023751, at *1 (W.D. Tenn. Aug. 26, 2019) (citing *Shane Group, Inc.*, 825 F.3d at 306; and *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1176 (6th Cir. 1983)).

As Rodriguez has offered no authority for his motion to seal, and the Court otherwise sees no reason to seal it, the Court **DENIES** the Motion to Seal [DE 262]. *See* LCrR 49.4(c).

## VII.    Rodriguez's Motion to Unseal Wire Tap Applications and Affidavits for Use at Trial as Impeachment Material [DE 265].

Rodriguez moves the Court to unseal wiretap applications for impeachment purposes, citing Federal Rules of Evidence 613 and 801. [DE 265 at 2192]. The United States responded, opposing his motion because the wiretap materials are exempt under *Brady*, the Jencks Act, and the "Wiretap Act." [DE 279 at 2809-11]. Rodriguez also filed a related motion to seal. [DE 264].

### i.    Background

The United States moved in 2018 to disclose the sealed wiretap applications to Defendants' counsel. [DE 265]. District Judge Hale granted the motion and ordered disclosure to counsel of record for purposes of discovery only. [DE 265 at 2191; 265-2 at 2195-98]. The United States provided Defendants' counsel with the redacted—sealed—wiretap materials in July 2018. [DE 278 at 2802-03]. In March 2022, Defendants' counsel were provided access to the unredacted, but still sealed, wiretap materials, through the United States Attorneys' Office. [*Id.* at 2802-03].

ii.  *Standard*

Federal Rule of Evidence 613 allows for inconsistent prior statement impeachment. Hearsay is excluded under Federal Rule of Evidence 801.

The Jencks Act "'generally requires the government, on motion of a defendant, to produce statements in its possession of witnesses who testify at trial.'" *United States v. Watson*, 787 F. Supp. 2d 667, 672 (E.D. Mich. 2011) (quoting *United States v. Short*, 671 F.2d 178, 185 (6th Cir. 1982)); 18 U.S.C. § 3500(b);[6] *see also United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) ("When *Brady* material sought by a defendant is covered by the Jencks Act . . . the terms of that Act govern the timing of the government's disclosure."); *United States v. Presser*, 844 F.2d 1275, 1282–1285 (6th Cir. 1988) (holding that a defendant is not entitled to broad pretrial discovery of impeachment evidence under *Brady*, *Giglio,* or Rule 16 and that the disclosure of such evidence is instead controlled by the Jencks Act).  The Jencks Act prohibits a court from ordering disclosure of Jencks material before the witness has testified in direct examination. *See* 18 U.S.C. § 3500(a).[7] The discovery of wiretap materials is also limited, as discussed in the Court's previous order on access to wiretap materials.  [DE 293].

Wiretap surveillance applications and orders are by default indefinitely sealed and generally "applications and orders shall be disclosed only upon a showing of good cause."  18 U.S.C. § 2518(8)(b).  When considering whether good cause has been shown, the Court considers

---

[6] Section 3500(b) provides, in full: "After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.  If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use."

[7] Section 3500(a) provides, in full: "In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena [sic], discovery, or inspection until said witness has testified on direct examination in the trial of the case."

the "privacy of other people" potentially affected by disclosure.  *See Applications of Kansas City Star*, 666 F.2d 1168, 1176 (8th Cir. 1981); *see also United States v. Florea*, 541 F.2d 568, 575 (6th Cir. 1976) (§ 2518 "sealing requirements were established [primarily] in order to protect the confidentiality of the government's investigation").

      *iii.    Analysis*

    Rodriguez cites no case law suggesting that the Court should unseal the materials.  [DE 265].  The Federal Rules of Evidence do not address the unsealing of wiretap applications for impeachment purposes.  Further, as the United States argues, under *Brady*, *Jencks*, and the "Wiretap Act,"[8] it need not turn over the wiretap materials to Defendants at this time.  [DE 279 at 2809-11].  Still, the United States has already disclosed the wiretap applications to Defendants' counsel.  The question, given Rodriguez's request, is more specifically whether the wiretap applications should be unsealed for the purposes of impeachment at trial.

    If Rodriquez can demonstrate at trial that the statement in the wiretap materials is admissible for purposes of impeachment under the Federal Rules of Evidence, then he will have demonstrated good cause to unseal the wiretap materials.  [DE 265 at 2192].  But that is a determination the Court will need to make when it arises at trial.  Thus, the Court **DENIES** Rodriguez's motion to Unseal Wire Tap [sic] Applications and Affidavits for Use at Trial as Impeachment Material [DE 265] without prejudice as premature.  Until then, the materials will remain sealed.

    The Court also **GRANTS IN PART** Rodriguez's motion to seal [DE 264], and docket entries DE 265 (main) and 265-2 will be sealed based on previous standing orders of this Court.

---

[8] The United States cites 18 U.S.C. § 2518.  [DE 279 at 2810-11].

*See* LCrR49.  The remaining related docket entries, [DE 264; DE 265-1; DE 279; DN 279-1] will not be sealed.

## VIII.   Cater's Motion to Exclude Evidence [DE 268].

Cater moves under 404(b) to exclude evidence from the United States' exhibit list: proposed exhibits 141, 142, 143, 144, 145, 149, 150, 151,[9] and testimony from the United States Witness 1.  [DE 268 at 2420].  Cater contends that the Court should dismiss Count 7, as the United States lacks probable cause for it.  [*Id.* at 2422 (incorporating arguments from DE 213-1)].  He argues if Count 7 is dismissed, the evidence is irrelevant.  [*Id.* at 2427-29].  He argues if Count 7 is not dismissed, the evidence is unfairly prejudicial.  [*Id.* at 2429-30].  The United States opposed Cater's motion, arguing the weight of the evidence is a question for the jury, and that the evidence is not unfairly prejudicial.  [DE 280 at 2818].

### i.   *Background*

In Count 2, the United States charges that Defendants "aided and abetted by each other . . . knowingly used, carried and discharged a firearm, during and in relation to a drug trafficking crime, for which they may be prosecuted in a court of the United States, that is conspiracy to distribute controlled substances . . . and in so doing they caused the death of a person, V.R., through the use of the firearm in such a manner as to constitute murder."  [DE 175 at 1020].  The United States alleges Cater was hired to kill V.R.  [DE 280 at 2816, 2823].  The United States' exhibit list includes text messages between Cater and Witness 1 allegedly discussing Cater's agreement to kill

---

[9] Exhibit 141 is "Cellphones seized from Chares Cater at the time of his arrest," including "N-73, recovered from his residence, and N75, recovered from his person at the time of his arrest, [] each assigned the [same] call number."  [DE 280 at 2814].  Exhibit 142 is "Cellphones seized from Cater's residence."  [*Id.*].  Exhibit 143 is "Cellbrite Extraction Reports for phones seized from Cater."  [*Id.*]  Exhibits 144 and 145 are "Cater's text messages discussing murder for hire."  [*Id.*]  Exhibit 149 is "Cater's jail calls with his mother."  [*Id.*].  Exhibit 150 is "Cater's jail calls with witness 1."  [*Id.*].  And Exhibit 151 is a "Letter sent to Cater by his attorney."  [*Id.*].

an individual, M.G., on behalf of Witness 1 in exchange for payment.  [DE 248; DE 268-4 at 2592-2604; DE 280 at 2814, 17].

    *ii.*     *Standard*

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401. The Court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Questions of foundation are typically reserved for trial so that they can be "resolved in proper context."  *Gresh*, 738 F. Supp. 2d at 706.

Rule 404(b) prohibits the introduction of evidence of a person's crimes, wrongs, or other bad acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).  Yet Rule 404(b)(2) allows the introduction of such evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  This list is inclusive rather than exclusive.  *See United States v. Bakke*, 942 F.2d 977, 981 (6th Cir. 1991) ("The list contained in Rule 404(b) is not exhaustive; evidence may be admitted for additional similar purposes").

Courts determine the admissibility of evidence under Rule 404(b) under a three-step process:

> [T]he court must first consider whether there is a sufficient factual basis that the act occurred; second, whether the act is being offered for an appropriate reason; and third, whether the probative value of the evidence is substantially outweighed by the unfair prejudicial impact of its use at trial.

*United States v. Gibbs*, 797 F.3d 416, 425 (6th Cir. 2015) (citing *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013)).

     *iii.*    *Analysis*

       *i.  Sufficient Evidence That Other Acts Occurred*

First, the Court must "determine whether there is sufficient evidence to support a finding by the jury that the defendant committed" the other act. *United States v. Delaney*, 443 F. App'x 122, 131 (6th Cir. 2011) (quoting *Huddleston v. United States*, 485 U.S. 681, 685 (1988)). "[T]he government need not prove probative "other acts" beyond a reasonable doubt; rather, that proof must merely be sufficiently compelling such that "the jury can reasonably conclude that the act occurred and that the defendant was the actor." *United States v. Carney*, 387 F.3d 436, 452 (6th Cir. 2004) (citing *Dowling v. United States*, 493 U.S. 342, 348 (1990)).

Cater argues that "a fair reading of Exhibit A reveals not only that Cater did not "discuss" a murder, but that no murder ever occurred." [DE 268 at 2425]. Cater contends that "[w]hen these messages are taken as a whole and viewed in their totality, it becomes clear that there was no true discussion or intention to enact a paid killing." [*Id.* at 2426].

Here, the "other act" as alleged by the United States—and acknowledged by Cater—is Cater's text message conversation with Witness 1 allegedly discussing a murder-for-hire arrangement.[10] [DE 268 at 2420; DE 280 at 2824]. Assuming that the United States lays a foundation at trial that the cell phone was Cater's (or that it was Cater having the conversations in the messages), proof of these conversations in the form of "forensic cell phone extractions . . . [is] sufficient evidence from which a jury could reasonably conclude that the prior acts occurred."[11]

---

[10] Thus, since the prior act is not the murder itself, whether a murder occurred is irrelevant.
[11] Again, questions of intent are left to the jury. *See United States v. Byars*, No. CRIM.A.06-91-KSF, 2006 WL 2366633, at *3 (E.D. Ky. Aug. 14, 2006) ("a defendant's motives and intentions are classic examples of questions of fact in most criminal trials").

*United States v. Stone*, No. 5:19-CR-10-TBR, 2020 WL 1877801, at *3 (W.D. Ky. Apr. 15, 2020) (internal quotations omitted). No evidentiary hearing is necessary on this point.

The Court notes that, while Cater moves to exclude exhibits on the United States exhibit list other than the text messages,[12] he does not support their exclusion as prior acts or under any other rule. These exhibits may be admissible at trial, given they are relevant, proper foundation is laid, and their probative value outweighs prejudice. Any prior acts evidence will need to be supported with a sufficient factual basis that the act occurred, will need to be offered for an appropriate reason, and the probative value of the evidence will need to be substantially outweighed by the unfair prejudicial impact of its use at trial. The Court does not further consider the exclusion of the exhibits on the United States list at this time.

### ii.  *Counts 2 and 7 Motion to Dismiss Arguments*

Before discussing the appropriateness of the reason for admission, the Court considers Cater's argument for dismissing Counts 2 and 7, as this analysis hinges on the count it applies to and Cater argues that the United States "intends to use this evidence to support Counts 2 and 7." [DE 268 at 2428].

Count 7 was "approved by a grand jury and therefore 'presumed to have rested on probable cause.'" *United States v. Roach*, 502 F.3d 425, 445 (6th Cir. 2007) (quoting *United States v. Suarez*, 263 F.3d 468, 481 (6th Cir. 2001)). The Sixth Circuit has held that a court may not interfere with a grand jury's investigation as long as "'it is not the sole or dominant purpose of the grand jury to discover facts relating to [a defendant's] pending indictment.'" *United States v.*

---

[12] Cater mentions in passing the United States' intention to introduce a letter from Cater's former defense counsel, arguing it "does not meet the standard of relevance to be admitted." [DE 268 at 2429]. This argument is unrelated to the rest of Cater's motion. The Court reserves its ruling on relevancy until trial so that "questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Gresh*, 738 F. Supp. 2d at 706.

*Breitkreutz*, 977 F.2d 214, 217 (6th Cir. 1992) (quoting *United States v. George*, 444 F.2d 310, 314 (6th Cir. 1971)).  The defendant has the burden of showing that abuse of the grand jury has occurred because "a 'presumption of regularity attaches to a grand jury's proceedings.'"  *Id.* (quoting *United States v. Woods*, 544 F.2d 242, 250 (6th Cir. 1976)).  "As in Roach, the Defendant here does not allege that the Grand Jury was manipulated or otherwise prejudiced against him." *United States v. Padilla*, No. 3:10-00258, 2012 WL 3644742, at *3 (M.D. Tenn. Aug. 23, 2012). Because Cater has not alleged that any irregularity in the grand jury's proceedings occurred here, the Court must assume that the grand jury rested on probable cause, and that probable cause supports Count 7.  *Roach*, 502 F.3d at 445.

The Court also addresses Cater's incorporated motion to dismiss count 2 for failure to charge and duplicity arguments.  [DE 213-1 at 1483-87].

Cater argues Count 2, "Use/Possession/Discharge of a Firearm During, and in Relation To, a Drug Trafficking Crime, Resulting in Murder," fails to charge him with an offense because it "uses elements from each of the two distinct § 924(c) offenses."  [*Id.* at 1485].  He contends that "[b]y setting forth the element of "possession" in conjunction with the element of "during and in relation to," the indictment partners the conduct element from the "possession" offense with the standard of participation element from the entirely separate "use or carriage" offense."  [*Id.* at 1485].  Cater cites *United States v. Combs*, in which the court held that "18 U.S.C. § 924(c) criminalizes two separate offenses—(1) using or carrying a firearm during and in relation to a drug trafficking crime, and (2) possessing a firearm in furtherance of a drug trafficking crime."  369 F.3d 925, 931 (6th Cir. 2004).  The Court in *Combs* held that the charge was defective because it combined language from both types of criminalized behavior, and that this language was copied in the jury instructions.  *Id.* at 931–935.  In contrast, here, the body of the Superseding Indictment

uses language from only the "use" offense—it charges that Cater "knowingly used, carried, and discharged a firearm, during and in relation to a drug trafficking crime. . . ." [DE 175 at 1020]. Also, since there has been no trial yet, no jury instructions have used combined language. And while Cater argues the use of elements from both offenses is "evidenced by [Count 2's] title," the language of the charge indicates the use offense. "[J]uries are presumed to follow their instructions," and the Court will instruct it on the use offense here. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Thus, Count 2 properly charges the use offense.

Cater also argues that Count 2 is duplicitous. As cited above, the Sixth Circuit has held that § 924(c) criminalizes two separate offenses. *Combs*, 369 F.3d at 931. "An indictment is duplicitous if it sets forth separate and distinct crimes in one count." *Davis*, 306 F.3d at 415. "[T]he prohibition against duplicitous indictments arises primarily out of a concern that the jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of any particular offense." *United States v. Verrecchia*, 196 F.3d 294, 297 (1st Cir. 1999) (quoting *United States v. Valerio*, 48 F.3d 58, 63 (1st Cir. 1995)) (internal quotation marks omitted). "[T]he court can cure the error of duplicity by instructing the jury that it must come to a unanimous verdict in regard to either one offense or the other." *United States v. Adesida*, 129 F.3d 846, 849 (6th Cir. 1997).

Cater again argues that Count 2's title, "Use/Possession/Discharge of a Firearm During, and in Relation to, a Drug Trafficking Crime, Resulting in Murder," sets forth both the use and possession offenses. [DE 213-1 at 1486-87]. He also argues that "the fact that Count 2 goes on to set forth completely one of the §924(c) offenses – i.e. alleging that Mr. Cater "used, carried and discharged a firearm, during and in relation to a drug trafficking crime" – does not save it from being duplicitous." [*Id.* at 1487]. Cater cites *United States v. Savoires* in support. 430 F.3d 376,

379-80 (6th Cir. 2005).  Again, however, the mixed offense language in *Savoires* was, like in *Combs*, in jury instructions.[13]  Furthermore, in *Savoires* the title was accurate, while the paragraph contained duplicitous or mixed offense language.  *Savoires*, 430 F.3d at 380.  Here, while the title/caption of Count 2 uses both the use and possession language from § 924(c), the paragraph contains no duplicitous or mixed offense language; as discussed above, it sets forth the use offense.  [DE 175 at 1020].  Furthermore, the Court will instruct the jury on the use offense only.  *See Adesida*, 129 F.3d at 849.  Thus, not only is Count 2 not duplicitous, but the Court will cure any error by properly instructing the jury on the count.

Thus, the Court **DENIES in part** Cater's motion to dismiss [DE 213], holding its ruling on the remainder of the motion on prosecutorial vindictiveness in abeyance in accordance with this Court's previous order.  [DE 260].

### iii.  Admissible for Appropriate Reasons

As Counts 2 and 7 remain, the Court addresses Cater's "Without Dismissal of Count 7" argument.  [DE 268 at 2429-34].  "To determine whether the proffered evidence is admissible for a proper purpose, the trial court must decide 'whether that evidence is probative of a material issue other than character.'"  *Carney*, 387 F.3d at 451 (quoting *Huddleston*, 485 U.S. at 686).  Cater does not directly address whether evidence of Defendant's prior conduct would be offered for an appropriate reason, which the Court must consider next.

Rule 404(b)(2) provides that, while propensity evidence is not allowed, "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  The United States argues that

---

[13] "[T]he jury might have found possession (rather than use or carriage) without finding that the firearm played a role, or was intended to play a role, in the underlying drug trafficking crime."  *Savoires*, 430 F.3d at 380–81.

Cater's past actions are evidence of motive, intent, preparation, plan, knowledge, and identity. The United States asserts that "[a] key issue at trial will be the identity of the individual who shot V.R.," and that "[t]his evidence would . . . demonstrate Cater's motive to make money; Cater's intent to commit the murder. . . his preparation to locate his victims, his plan to murder of V.R. . . . his knowledge regarding the murder . . . and his identity as the actual shooter." [DE 280 at 2823-24].

As discussed above, Cater is charged in Count 2 with having "*knowingly* used, carried, and discharged a firearm, during and in relation to a drug trafficking crime . . . and in so doing, [Defendants] caused the death of a person, V.R., through use of the firearm in such a manner as to constitute murder . . . in that the defendants did unlawfully kill the victim with *malice* aforethought." [DE 175 at 1020 (emphasis added)]. Count 7 charges Cater with having "*knowingly and intentionally* conspired . . . to attempt to intimidate, threaten, and corruptly persuade another person, that is, Witness 1, *with intent* to influence, delay, and prevent the testimony of Witness 1 in an official proceeding." [*Id.* at 1024-25 (emphasis added)]. Cater's knowledge, motive, and intent are at issue, and the evidence is relevant and probative to knowledge, motive, and intent. *See, e.g.*, *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985) ("the evidence must relate to a matter which is "in issue," and must deal with conduct substantially similar and reasonably near in time to the offenses for which the defendant is being tried"); *United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994) (where intent is at issue, "other acts evidence may be introduced under Rule 404(b)"); *United States v. Lattner*, 385 F.3d 947, 957 (6th Cir. 2004) ("when a defendant is charged with a specific intent crime . . . 404(b) evidence is admissible to prove intent, subject to the probative/prejudicial balancing."). *See also* *Brewer*, 2018 WL 773137, at *2 ("Intent, knowledge, and absence of mistake may be analyzed together given the specific-intent requirements of the drug-trafficking charges and Brewer's

expected defense.") (citing *United States v. Fraser*, 448 F.3d 833, 842 (6th Cir. 2006) ("When a defendant argues that he was an innocent participant in a scheme, there can be little difference among putting his intent, plan, preparation, knowledge, or absence of mistake at issue.")).

Cater argues that the evidence cannot establish a "*modus operandi*" because no act—neither payment nor murder—occurred.  [DE 268 at 2426-27].  This argument ignores, as the United States argues, the part of the evidence where Cater and Witness 1 discussed exchanging $30,000 for murder—the same amount of money the United States alleges was exchanged for killing V.R.  *See United States v. Allen*, 619 F.3d 518, 524 (6th Cir. 2010) quoting *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006) ("[i]t is not necessary . . . that the crimes be identical in every detail"); *see also United States v. Mack*, 258 F.3d 548, 554 (6th Cir. 2001) ("standard conduct, although not particularly unusual by itself, may, in combination, present an unusual and distinctive pattern constituting a 'signature').  Thus, the evidence is also probative of *modus operandi.*

### iv.  Rule 403 Balancing

Finally, the Court must determine whether the probative value of the evidence at issue is substantially outweighed by the unfair prejudicial impact of its use at trial.  Rule 403 provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of ... unfair prejudice."  Fed. R. Evid. 403.  "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest [a] decision on an improper basis."  *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006) (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993) (citation and quotation marks omitted)).  "Such improper grounds include 'generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the

latter bad act now charged.'" *United States v. Bell*, 516 F.3d 432, 445 (6th Cir. 2008) (quoting *Old Chief v. United States*, 519 U.S. 172, 180–81 (1997)).  Under the Rule 403 analysis, courts must "look at the evidence in 'the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.'" *Newsom*, 452 F.3d at 603 (quoting *Bonds*, 12 F.3d at 567 (citation omitted)).

Cater argues that the evidence is unfairly prejudicial because "[t]he jury would overlook the obvious legal and factual distinctions by ignoring that it was Witness 1 who wanted someone killed when they unilaterally sought out Mr. Cater, and that there is no evidence that Mr. Cater ever agreed to do so for the witness."  [DE 268 at 2429-34].  He also argues that, without an evidentiary hearing before trial, there is a substantial risk of a mistrial if the Court then decides Witness 1's "testimony does not pass Rule 404 muster."  [*Id.* at 2430].  Finally, Cater also argues that the Court must consider "whether there are alternative sources of proving the same facts." *Delaney*, 443 F. App'x at 133.  That said, neither party suggests any alternative sources for proving the same facts.

Cater's text messages are probative of at least intent, motive, and knowledge, all of which are at issue.  Even if the jury were inclined to prejudice, the Court will instruct the jury on the proper use of the evidence.  *See United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996) ("The magnitude of that risk might well have been reduced by a clear and concise instruction identifying for the jurors the specific purpose for which the evidence was admissible and limiting their consideration of the evidence to that purpose."); *and Richardson v. Marsh*, 481 U.S. 200, 211 (1987) ("juries are presumed to follow their instructions").  The Court thus concludes that the probative value is not substantially outweighed by unfair prejudice.

Thus, because there is sufficient evidence that other acts occurred, they are offered for appropriate reasons, and the probative value is not substantially outweighed by unfair prejudice, the Court **DENIES** Cater's Motion to Exclude Evidence [DE 268].  The Court also **DENIES** Cater's motion for an evidentiary hearing on this motion as unnecessary, as "his argument is 'entirely legal in nature,'" and the Court relied on no disputed facts when resolving this motion. *United States v. Ligon*, 861 F. App'x 612, 621 (6th Cir. 2021) (quoting *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019).  The parties **SHALL** submit proposed limiting instructions for the Court's use in the event the above discussed character evidence is admitted.

### IX.     United States' Motion to Admit Defendant Rodriguez's Statements [DE 276].

The United States moves in a late motion to admit Rodriguez's proffer agreement statements, arguing that he signed a waiver of admissibility and that it is evident he will offer inconsistent evidence at trial.  [DE 276 at 2790-91].  Rodriguez opposes this motion, arguing that it is premature.  [DE 286 at 2845].  The United States also moved to seal its motion.  [DE 275].

The United States cites *United States v. Shannon*, 803 F.3d 778, 783 (6th Cir. 2015) in support of its motion.  "Generally, statements made by defendants in proffer sessions are inadmissible under Rule 410 of the Federal Rules of Evidence." *Shannon*, 803 F.3d at 783 (citation omitted).  But defendants may waive Rule 410 objections, "absent evidence that a waiver is unknowing or involuntary." *United States v. Fifer*, 206 F. App'x 502, 509 (6th Cir. 2006).  The Court in *Shannon* found that a proffer agreement is a contract, so statements from a defendant's proffer are admissible if the statement falls within the proffer agreement's waiver provision. *See Fifer v. United States*, 660 F. App'x 358, 364 (6th Cir. 2016) ("in *Shannon*, we held that a waiver provision that allowed the government to use the defendant's proffer statements 'to rebut any evidence offered by [the defendant]' applied to evidence elicited by defense counsel during cross-examination of a government witness").  Rodriguez's proffer agreement contains a waiver

provision.  Thus, absent evidence that the waiver was unknown or involuntary, the provision is valid.[14]  *Shannon*, 803 F.3d at 783; *Fifer*, 206 F. App'x at 509.

But the United States' motion is premature.  If, at trial, Rodriguez introduces evidence or testimony inconsistent with his proffer agreement, and the United States lays a foundation for the proffer agreement to rebut such an inconsistent statement or evidence, the United States' motion to admit will be granted, absent evidence that the proffer waiver was unknown or involuntary. Thus, the Court **DENIES** at this time as premature the United States' Motion to Admit Defendant Rodriguez's Statements [DE 276].

The Court also **GRANTS in part** the United States' Motion to Seal [DE 275], and Rodriguez's Motion to Seal [DE 285], which contain sensitive proffer information both parties agree should be sealed.  Docket entries DE 276 (and all attachments) and DE 286 will be sealed. The remaining related docket entries, [DE 275; DE 285] will not be sealed.

### X.  Cater's Motion in Limine to Exclude Statements [DE 300].

Cater moves in a late motion under to exclude a Rodriguez's—a non-testifying codefendant's—statements.[15]  [DE 300 at 2911].  He argues the calls recently produced by the United States include hearsay—Rodriguez's statements to third parties talking about Cater incriminatingly—so if the United States cannot prove Rodriguez made the statements in furtherance of a conspiracy, it cannot admit them at trial.  [*Id.* at 2912].  The United States argues that Rodriguez, Cater, and Dwain Castle[16] were coconspirators, and thus their statements made in furtherance of the conspiracy are admissible under Federal Rule of Evidence 802(d)(2)(E).  [DE 303 at 2916].

---

[14] Rodriguez does not argue otherwise.
[15] Cater specifically "believes the Proposed Exhibits 2, 4, 8, 11, 13, 17, 19, 24, 70, 155, and 156 contain" hearsay.  [DE 300 at 2912].
[16] A former co-defendant who pleaded out.  [DE 90].

i.   *Standard*

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401. The Court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Questions of foundation are typically reserved for trial so that they can be "resolved in proper context."  *Gresh*, 738 F. Supp. 2d at 706.

Statements made by co-conspirators are sometimes an admissible exemption to the hearsay rule.  Federal Rule of Evidence 801(d)(2)(e) provides that an out of court statement is admissible when the statement is "offered against an opposing party and was made by the party's coconspirator during and in furtherance of the conspiracy."  Fed. R. Evid. 801(d)(2)(e).  For a statement to be properly admitted under this exclusion, the government must prove by a preponderance of evidence that: (1) a conspiracy existed; (2) the defendant and the declarant were co-conspirators; and (3) the statements were made during the course of and in furtherance of the conspiracy.  *United States v. Conrad*, 507 F.3d 424, 429 (6th Cir. 2007).

"A statement is made 'in furtherance' of a conspiracy if it is intended to promote the objectives of the conspiracy."  *Conrad*, 507 F.3d at 430.  It is not necessary for the statement to have actually advanced the conspiracy to be considered "in furtherance of a conspiracy."  *Conrad*, 507 F.3d at 430.  However, statements made after the objects of the conspiracy have been completed are not made in furtherance of the conspiracy.  *Krulewitch v. United States*, 336 U.S. 440 (1949) (an agreement to conceal a completed crime does not extend the life of the conspiracy).

ii.   *Analysis*

33

A motion to admit or exclude the recordings is premature at this time, as the admissibility of the statements is dependent upon the government's proof on the above factors. The Court will make a ruling on the transcripts' and recordings' admissibility at the appropriate time during trial. *United States v. Nighbert*, No. CRIM.A. 3:08-21-DCR, 2009 WL 393773, at *2 (E.D. Ky. Feb. 13, 2009). The Court will thus **DENY** Cater's Motion to Exclude Statements [DE 300] and hold its ruling in abeyance until trial. Assuming the recordings are relevant, proper foundation is laid, and the probative value outweighs the prejudice, if the United States can prove, by a preponderance of the evidence that (1) a conspiracy existed, (2) Cater and the declarant (presumably Rodriguez) were coconspirators, and (3) that the statements were made during the course of and in furtherance of the conspiracy, the statements will be admissible at trial.

## CONCLUSION

For the reasons stated, and the Court being otherwise sufficiently advised, **IT IS ORDERED that**

1. The United States' Motion to Admit Cater's Post-Miranda Statements at Trial for Impeachment Purposes [DE 239] is **GRANTED in part** and **DENIED in part**;

2. United States Motion to Admit Defendant's Recorded Statements Made to His Wife While in Custody [DE 240] is **GRANTED in part** and **DENIED in part**;

3. Rodriguez's Motion to Exclude Evidence [DE 249] is **DENIED**;

4. Rodriguez's Motion in Limine [DE 252] is **DENIED**;

5. Cater Motion to Sever Count 6 of Superseding Indictment [DE 261] is **GRANTED in part**;

6.  Rodriguez's Motion to Compel the United States to File the Unredacted Wire Tap Applications Under Seal with the Court for Purposes of Appellant Review [DE 263] is **DENIED**;

7.  Rodriguez's Motion to Unseal Wire Tap Applications and Affidavits for Use at Trial as Impeachment Material [DE 265] is **DENIED;**

8.  Cater's Motion to Exclude Evidence [DE 268] is **DENIED**, and his Motion to Dismiss [DE 213] is **DENIED in part**; The parties **SHALL** submit proposed limiting instructions for the Court's use;

9.  United States' Motion to Admit Defendant Rodriguez's Statements [DE 276] is **DENIED**;

10. Cater's Motion in Limine to Exclude Statements [DE 300] is **DENIED**;

11. The various motions to seal [DE 262; DE 264; DE 266; DE 270; DE 275; DE 285] are **GRANTED in part** and **DENIED in part**, as set forth above and in accordance with LCrR 49.4 and previous standing orders of this Court;

12. For docketing purposes, and in accordance with the above order, the following docket entries will be sealed: [DE 265 (main); DE 265-2; DE 274 (and all attachments); DE 276 (and all attachments); DE 286]. The following related docket entries will not be sealed: [DE 262; 263; DE 263-1; DE 264; DE 265-1; DE 266; DE 270; DE 275; DE 277; DE 279; DN 279-1; DE 285].

Rebecca Grady Jennings, District Judge

United States District Court

August 12, 2022

Cc:     Counsel of Record